**SIGNED THIS: June 12, 2026**

**Peter W. Henderson**
**Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **In re:** | |
| **TRACI EILEEN HOULT,** | **Case No. 26-90018** |
| **Debtor.** | |

### OPINION

Traci Hoult owes her ex-spouse Justin Hefner $117,437.92 due to a judgment entered by a state court in their divorce case. Hoult has filed for bankruptcy under Chapter 13, and Hefner has filed a proof of claim in the amount of the judgment debt. He asserts that the debt is a domestic support obligation. Hoult disagrees and objects to the proof of claim. Although the judgment stems from the couple's divorce, it is not a debt in the nature of support, so Hoult's objection will be sustained.

### I.     Background

On June 27, 2023, the Vigo County (Indiana) Superior Court entered an order after conducting a "hearing on assets/debt allocation" in the divorce proceedings

between Justin Hefner and Traci Hefner (now Hoult). The following facts are taken from that order.

Hefner and Hoult were married in June 2016. Neither spouse worked; both subsisted on Hefner's disability payments from the Social Security Administration in the amount of $3,000 to $4,000 per month, which they maintained in a joint checking account. The couple had no children together. In February 2018, Hefner was arrested and detained. The next month, he received a direct deposit in the joint checking account from the U.S. Department of Veteran Affairs (VA) in the amount of $121,191.17, representing retroactive compensation for a service-related disability. Over the next 21 months, while Hefner was incarcerated, Hoult spent all of that money. Hefner had not authorized Hoult to spend the money; he had intended to use it to build a retreat center for veterans. Hefner discovered that the money was gone only when he was released from jail in December 2019. He filed for divorce the next month. Since that time, Hefner has been entitled to, and has received, ongoing VA disability benefits at a 100% rating.

Hoult's misuse of the retroactive lump-sum VA payment was not subtle. Two days after the payment was deposited, Hoult transferred $50,000 to her own individual bank account by writing herself a check drawn on the joint account. On the same date, she withdrew $9,000 in cash from the joint account. Two weeks later, she cashed out another $2,000. A month later, she cashed out $7,000 and transferred another $7,000 to her individual account. In addition, she routinely withdrew $500 in cash from the joint account using different ATMs; in May 2018 alone she withdrew a total of $22,000. And so forth. Hoult testified that she had spent the entire VA payment, but she "could not recall exactly how she spent the money and ha[d] no receipts for any purchases." The court did not find Hoult—who tried to downplay her past conviction for perjury (in a case where she was also charged with welfare fraud and theft)—credible.

Indeed, the court was outraged by Hoult's conduct. It ordered, among other things, that Hoult repay the entire VA payment to Hefner. Whether or not the VA payment was a marital asset, the court concluded, Hefner was entitled to a money judgment in his favor in the amount of $121,191.17 "so that he may seek any collection efforts." Though it was unlikely that Hefner would be able to recover from Hoult, it would be a "true injustice for him not to be able to recover these benefits which are to assist in replacing his future income due to the permanent disability." Because no other assets (apart from two cars and several pieces of personal property) remained in the marital estate, no other monetary award was entered in favor of either party.

In January 2026, Hoult filed a Chapter 13 bankruptcy petition. At the time, she owed $117,437.92 on the judgment debt.

2

## II.  The judgment debt is not a domestic support obligation.

Domestic support obligations, or DSOs, receive special protections under bankruptcy law. *United States v. Windsor*, 570 U.S. 744, 772 (2013). While debtors are generally entitled to a fresh start, bankruptcy does not provide "a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and to maintain and educate his children." *Wetmore v. Markoe*, 196 U.S. 68, 77 (1904); see *Matter of Trentadue*, 837 F.3d 743, 749 (7th Cir. 2016). DSOs are therefore entitled to priority status, 11 U.S.C. §507(a)(1), which means they must be paid in full in a Chapter 13 plan, 11 U.S.C. §1322(a)(2). They are not dischargeable. 11 U.S.C. §523(a)(5); 11 U.S.C. §1328(a)(2).

The term "domestic support obligation" is defined, in relevant part, as a debt "in the nature of alimony, maintenance, or support … of [a] spouse, former spouse, or child or the debtor … without regard to whether such debt is expressly so designated." 11 U.S.C. §101(14A)(B). Whether a state court divorce order contains a DSO is a matter of federal law. *Trentadue*, 837 F.3d at 748. State-law labels are not dispositive; substance controls over form. *Id*. Where there is no settlement agreement, bankruptcy courts look to the intent of the state court in rendering its judgment, which is accomplished by considering three factors:

(1)  the language and substance of a judgment in the context of the surrounding circumstances, using extrinsic evidence if necessary;

(2)  the parties' financial circumstances at the time of the judgment; and

(3)  the function served by an obligation at the time of the judgment.

*Id*. at 749. Debt for a support obligation typically is contrasted with debt resulting from a division of marital assets, which is treated as normal, non-priority debt. *Matter of Reines*, 142 F.3d 970, 972 (7th Cir. 1998); see *In re Sprecher*, 672 B.R. 86, 95–96 (Bankr. E.D. Pa. 2025) (describing difference between support obligations and division of marital assets).

Under the three *Trentadue* factors, I find that the state court did not intend to impose an obligation in the nature of maintenance, alimony, or support in ordering Hoult to repay Hefner. Instead, it intended to provide Hefner with a collectible judgment to compensate for Hoult's conversion of his benefits. The debt therefore is not a DSO.

3

**A.**      **The language and substance of the state court order does not impose an obligation in the nature of maintenance.**

I start by noting the statutory authority invoked by the state court. The order expressly relies upon Indiana Code §31-15-7-4, which governs the division of property and directs the court to divide the property in a just and reasonable manner. Section 31-15-7-4 does not address support obligations. Instead, Indiana Code §31-15-7-1 permits a court to order maintenance after making findings under §31-15-7-2. The court here did not mention §31-15-7-1 or make findings under §31-15-7-2. Under state law the court purported to enter the judgment against Hoult under the property-division statute, rather than the maintenance statute. There is some evidence, therefore, that the court intended by its order to divide property rather than award support. Indeed, every other part of the order addresses the division of property (cars and other personal property), and the order was entered after a hearing "on assets/debts allocation."

If we deem relevant the dichotomy Indiana law recognizes between property division and maintenance, this money judgment falls on the property-division side of the line. *Goodman v. Goodman*, which the state court cited, describes the distinction:

> Various factors are considered in determining whether periodic payments are properly characterized as maintenance or a property settlement. Factors indicating that periodic payments are maintenance include: the designation as maintenance; provisions terminating the payments upon the death of either party; payments made from future income; provisions for termination upon remarriage; provisions calling for modification based upon future events; and payments for an indefinite period of time.
>
> Factors indicating that periodic payments are a property settlement include: payments for a sum certain payable over a definite period of time; a lack of provisions for modification based on future events; the obligation to make payments survives the death of the parties; the provision calls for interest; and the award does not exceed the value of the marital assets at the time of dissolution.

754 N.E.2d 595, 601 (Ind. Ct. App. 2001). Here, of course, we have a lump sum payment, not periodic payments, which by itself suggests property division. *Id*. at 600 ("[A]n obligation to be paid in a lump sum … is more likely to be considered a property settlement."); see also *In re Siner*, 651 B.R. 240, 250 (Bankr. N.D. Ill. 2023). Putting that aside, the payment is for a sum certain, cannot be modified in the future, survives the

4

death of the parties, calls for interest, and is based upon the value of the asset (the VA payment) that was dissipated. On the other hand, in practical terms the judgment may be satisfied only with payments from future income because the VA money had been completely dissipated by the time of the divorce petition (a subject I discuss below). On the whole, though, the judgment appears to represent a division of property, not an award of maintenance or support. The court did not intend to impose a maintenance obligation under Indiana law.

> **B.     The substance of the state court order does not impose an obligation based upon a division of marital assets, either.**

The order purports to divide property. The court concluded that Hoult had engaged in waste, misuse, and aimless spending and had thus engaged in dissipation of marital assets, which is a concept relating to property division. Ind. Code §31-15-7-5(4). It found "no reason to award [Hoult] with any of the lump sum payment even if it was still existing at the time" the divorce petition was filed. "Under the theory that the VA disability lump sum payment is a marital asset," the court awarded the entirety of the asset to Hefner after concluding that Hoult engaged in dissipation of assets. Alternatively, if it were not a marital asset, the court still entered a money judgment against Hoult so that Hefner could "seek any collection efforts."

This is where the issue gets muddy. The state court did not have authority under the property-division statute to impose a money judgment in the amount of $121,191.17. A divorce court may not "claw back" money that was dissipated before the date of the "final separation," which refers to the date the divorce petition was filed. *Pitman v. Pitman*, 721 N.E.2d 260, 266–67 (Ind. Ct. App. 1999). The VA money was gone by January 2020, when Hefner filed for divorce. The state court could only have awarded Hefner compensation from marital assets existing in January 2020. See *Layne v. Layne*, 77 N.E.3d 1254, 1264 (Ind. Ct. App. 2017), citing *In re McManama*, 399 N.E.2d 371 (Ind. 1980). "Property division … cannot exceed the value of the marital assets without being considered an improper form of maintenance and an abuse of discretion." *In re Marriage of Sloss*, 526 N.E.2d 1036, 1038 (Ind. Ct. App. 1988). True, if a party dissipated a marital asset, a court may award an "equalization" payment from other marital assets to account for the dissipation of that asset. See *Layne*, 77 N.E.3d at 1262. Hefner rightly recognizes, though, that the court here did not impose the money judgment as an equalization payment. No other marital assets were available to equalize Hoult's dissipation of the VA payment.

5

As noted above, the court made two alternative findings; neither represented a proper division of property under §31-15-7-4. First, the court assumed the VA payment was a marital asset:

> Under the theory that the VA disability lump sum payment is a marital asset, the Court concludes that [Hoult] engaged in dissipation of assets. For this reason, [Hefner] is awarded the entire lump sum payment of $121,191.17 for [Hoult] to repay to [Hefner].

That language tracks the typical analysis that would attend to property division under §31-15-7-4, even though the court did not have authority to divide an asset that did not exist at the time the divorce petition was filed.

The court then analogized Social Security benefits (at issue in *Severs v. Severs*, 837 N.E.2d 498 (Ind. 2005)) to VA benefits and concluded:

> Based on … *Severs*, the VA disability lump sum payment was not even a divisible marital asset and combined with the fact that [Hoult] had no authority to spend that money, the entire lump sum amount is awarded to [Hefner].

That language tracks the analysis that Indiana courts use to determine whether an asset is part of the marital "pot" that may be divided under §31-15-7-4. See *Luttrell v. Luttrell*, 994 N.E.2d 298, 303 (Ind. Ct. App. 2013). But again, the asset did not exist at the time of the divorce, so the asset could not be awarded to anyone. And anyway when an asset is excluded from the marital estate there is no reason to "award" it to either party; the party that owns the asset simply retains the asset because it is "not subject to distribution." See *Beckley v. Beckley*, 822 N.E.2d 158, 162 (Ind. 2005). So while the language of the order tracks the property-division statute, in substance the entry of a money judgment against Hoult for wasting a non-marital asset that had belonged to Hefner is not actually the division of marital property under Indiana law.

The order would therefore be improper as a division of property under §31-15-7-4. A federal bankruptcy court, of course, does not sit in review of state court judgments—especially those involving domestic relations—so I do not mean to suggest that the order is anything other than valid and binding. See *Taylor v. Cowger*, No. 25-2508, 2026 WL 457242, at *1 (7th Cir. 2026) (nonprecedential) (citing relevant doctrines). My task is only to determine whether the debt resulting from the judgment is a DSO, which requires determining the intent of the state court. The language of the order suggests that the court intended to divide the marital estate (or set aside the VA

6

payment from the marital estate) under §31-15-7-4, but the substance of the order does not correspond to the way marital property may be divided under Indiana law.

### C.     The substance of the state court order imposes a civil tort judgment against Hoult based upon her conversion of non-marital funds.

If the court did not intend to impose maintenance, and did not in fact divide marital property, what was the court's real intention? I conclude that the court intended to hold Hoult civilly liable for converting Hefner's money, as if Hefner were a plaintiff in a tort suit, see, e.g., *Mahvash K, LLC v. Hardwood Timber & Veneer, Inc.*, 236 N.E.3d 689, 696–97 (Ind. Ct. App. 2024). The court purported to act under the state's divorce laws but in fact used its power as a court of general jurisdiction to enter a civil judgment against Hoult for her tortious acts:

> [T]he VA disability lump sum payment was not even a divisible marital asset *and combined with the fact that [Hoult] had no authority to spend that money*, the entire lump sum amount is awarded to Justin.

The language I have emphasized is unnecessary to a finding under the divorce laws; if an asset is not a marital asset, it is not subject to distribution, period. I find that, by mentioning that Hoult "had no authority to spend that money," the court determined that Hoult had converted the funds and was therefore liable in the amount of funds converted. Cf. Ind. Code §35-43-4-3(a); see generally *Harper v. S&H Leasing, LLC*, 277 N.E.3d 87 (Ind. 2026) (describing conversion under Indiana law). The court's intent was clear: it reduced its order to a money judgment "so that [Hefner] may seek any collection efforts." See Ind. Trial R. 69; Ind. Code §24-4.6-1-101. Substantively, this is not maintenance *or* property division—it complies with neither §31-15-7-1 (maintenance) nor §31-15-7-4 (property division)—but rather a civil tort judgment enforceable as such.

The court also suggested that the Social Security Administration[1] look into whether it could reissue the VA lump sum payment to Hefner. Why suggest such a thing? It is obvious the court felt strongly about Hoult's conversion of benefits from a disabled veteran. The court was trying to restore the benefits Hefner had been entitled to, that were squandered by Hoult, by any means it could think of. The court hoped that the government would reinstate the award to Hefner and then pursue Hoult for the

---

[1] I assume the court either meant the VA or did not appreciate the difference between Social Security disability and VA disability. Compare 38 U.S.C. §1101 *et seq.* (VA disability) with 42 U.S.C. §401 *et seq.* (Social Security disability).

misuse of funds because it knew that Hoult had no income and would not be able to pay the judgment herself. "It is unlikely that [Hefner] will be able to recover those assets from [Hoult]." The judgment represents, in substance, a (likely uncollectible) civil judgment debt, not a debt in the nature of support.

### D.    The debt is not in the nature of support.

The language of the order suggests that it was intended to be an order dividing property, not an award of support. The substance of the order indicates that it was intended to be a collectible civil tort judgment, not an award of support. Under the first *Trentadue* factor, therefore, the state court did not intend to impose a support obligation.

The two other *Trentadue* factors are in accord. With regard to the parties' financial circumstances, Hefner, who had been approved to receive both Social Security and VA benefits, was better situated than Hoult, who did not work during the marriage and apparently did not earn any income at the time of the divorce either. It would be odd to require the spouse with no income to support the spouse with regular income. See *Reines*, 142 F.3d at 973; Ind. Code §31-15-7-2(3)(C) (directing court to consider earning capacity of each spouse in determining whether to impose maintenance obligation); contrast with *Trentadue*, 837 F.3d at 751 (finding support obligation where award was entered in part based on debtor's ability to pay).

As for the function served by the obligation, the state court intended both that Hefner would have a collectible judgment against Hoult and that the federal government would know the court's view that Hoult had misused the VA lump sum payment. The function was not that Hoult would support Hefner in the future; the court concluded that was unlikely.

I therefore find that the state court did not intend to impose, and did not actually impose, an obligation in the nature of alimony, maintenance, or support.

### E.    Hefner's arguments to the contrary are not persuasive.

Hefner urges me to infer that the state court's intent was that Hoult provide support by paying a judgment that would provide Hefner with future income. He relies upon the penultimate paragraph of the order (with my emphasis added):

It is unlikely that [Hefner] will be able to recover those assets from [Hoult] which Hefner earned after being disabled from his service to our country. It would be a true injustice for him not to be able to recover these benefits

8

> *which are to assist in replacing his future income* due to the permanent
> disability.

In my view, the focus of the entire paragraph is on the "true injustice" of what happened. The court intended to emphasize that Hoult's acts were particularly egregious because they deprived a veteran of disability benefits he had earned "after being disabled from his service to our country." Those past benefits were meant "to assist in replacing his future income due to the permanent disability." I do not read the court's words to say that the *judgment* it entered was intended to assist in replacing Hefner's future income. In the first sentence of that paragraph, the court explicitly acknowledged that Hoult would not be able to pay the judgment; that's why the court wanted the government to get involved. Moreover, the benefits that were converted were meant to replace past, not future, income; since January 2020, the VA has issued benefits to Hefner at a 100% rating to replace his future income due to his permanent disability. The court ruled that any future benefits belong to Hefner.[2] Therefore, I find that, notwithstanding some imprecise language[3] in paragraph 18, the court did not intend to impose a judgment to assist Hefner in replacing his future income. It intended to compensate Hefner for a past wrong. Paragraph 17, not 18, contains the salient evidence of intent: the judgment was entered "so that [Hefner] may seek any collection efforts" on what is in substance a civil tort judgment.

Hefner relatedly argues that the judgment debt is in the nature of support because it represents restoration of the VA payment, which was issued by the government to support him. He bases his argument on language found in *Trentadue*, where the state court had awarded $25,000 in attorney fees as a lump sum to the non-debtor spouse because the debtor had taken a scorched-earth approach to the family court litigation. 837 F.3d at 749. The award was "restorative" in nature, not punitive. *Id*. And it was issued after a trial concerning child support; the state court intended to make sure that its distribution of child support was not undermined by the debtor's costly legal tactics. *Id*. at 751. Putting those threads together, Hefner argues that the

---

[2] Again, the court did not distinguish between Social Security disability benefits and VA disability benefits. I read the order to implicitly find that any VA benefits received after the filing of the divorce petition belong to Hefner, even though the court only mentions post-petition Social Security benefits.

[3] Had the court written, "It would be a true injustice for him not to be able to recover these benefits, which *were* to assist in replacing his future income due to the permanent disability," Hefner's argument would be considerably weaker. Reading the *entire* order and construing the judgment *as a whole,* I find that understanding "are" to mean "were" in paragraph 18 more precisely expresses the court's intent. See *Trentadue*, 837 F.3d at 750 (emphasis in original).

state court order here meant to restore Hefner's VA benefit, which was in the nature of support, so as in *Trentadue* it too should be considered a DSO.

*Trentadue* is not quite on point, though, for two reasons. First, *Trentadue* announced that it was reviewing the bankruptcy court's determination of the state court's intent for clear error. 837 F.3d at 748. The premise of clear error review is that there are often two permissible views of the evidence, *Cooper v. Harris*, 581 U.S. 285, 299 (2017), so the fact that the bankruptcy court's view in *Trentadue* was affirmed on appeal does not mean it was the only permissible view of the evidence. In other words, although *Trentadue* is binding precedent, it does not compel me to construe the facts here in a certain way. My view of the evidence is that the state court did not intend to impose a support obligation; the fact that the converted money represented the proceeds from a disability benefit payment does not change that view.

Second, *Trentadue* affirmed the bankruptcy court's findings, in large part, because failing to award the non-debtor spouse with $25,000 in attorney fees would have undermined the child support order the state court did impose. 837 F.3d at 751. The state court took "a holistic view of the couple's financial position" and knew that the non-debtor spouse would not be able to afford a large legal bill. *Id*. The bankruptcy court found that the expensive litigation would have had an adverse financial effect on the children if the non-debtor spouse were not compensated. *Id*. Here, by contrast, support was never at issue at the hearing on "assets/debts allocation." The judgment was not entered to ensure that Hefner would maintain a certain standard of living. Had the court not entered the judgment, Hefner would not have been placed in financial peril, because he receives ongoing disability benefits at a 100% rating from the VA. The judgment was not entered based upon an evaluation of the couple's respective financial conditions. *Trentadue* involved a very different situation.

\*       \*       \*

In summary, the state court did not order that Hoult continue to support Hefner. The judgment debt is not in the nature of alimony, maintenance, or support. The Debtor's objection to Claim #4-1 is therefore SUSTAINED. Claim #4-1 shall be treated as a general unsecured debt and not a domestic support obligation.

# # #

10